ORIGINAL

FILED IN OPEN COURT
U.S.D.C. - Atlanta

NOV 1 2 2025

KEVIN P. WEIMER, Clerk
By ___ Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

UNITED STATES OF AMERICA

v.

DAVID BRADFORD

Criminal Information

No. 1:25-cr-475

THE UNITED STATES ATTORNEY CHARGES THAT:

### Count One
### Conspiracy to Commit Wire Fraud
### 18 U.S.C. § 371

1. Beginning no later than in or about late 2021, and continuing until in or about June 2024, in the Northern District of Georgia and elsewhere, the defendant, **DAVID BRADFORD**, did knowingly and willfully combine, conspire, confederate, agree, and have a tacit understanding with others known and unknown to the United States, to commit an offense against the laws of United States, that is: to devise and intend to devise a scheme and artifice to defraud lenders, and to obtain money and property from these lenders by means of materially false and fraudulent pretenses, representations, and promises, and by the omission of material facts, and for the purpose of executing this scheme, to cause wire communications to be transmitted in interstate commerce, in violation of Title 18, United States Code, Section 1343.

### Background

At all times relevant to this Information:

2. Drive Planning LLC ("Drive Planning") was a Georgia limited liability company formed in 2015. Drive Planning billed itself as a comprehensive financial group that offered investors the ability "to create an investment portfolio which offers greater control over your return, taxation, and potentially guarantees." Drive Planning claimed that its investment portfolio consisted of traditional stocks and bonds but went well beyond "Wall Street with offerings such as energy projects, real estate, storage units, film and television, CBD Oil, and other business opportunities."

3. Defendant **DAVID BRADFORD** was Drive Planning's Chief Operating Officer.

4. Individual-1 was the founder, owner, and Chief Executive Officer of Drive Planning. Individual-1 formerly held a Series 65 securities license.

5. Drive Planning offered multiple investment opportunities, including: (i) the "Real Estate Acceleration Loan" opportunity or "REAL," and (ii) the "Cash Out Real Estate Fund" or "CORE Fund."

6. Drive Planning marketed investing in REAL and the CORE Fund as "easy and simple," advising prospective investors that they did not have to be an "accredited investor," and they could invest in REAL and the

2

CORE Fund by using money from retirement accounts, savings, and lines of credit.

7. REAL was Drive Planning's primary investment vehicle. In promotional materials and on its website, Drive Planning marketed REAL to prospective investors as a "bridge loan opportunity promising 10% in 3 months." Drive Planning explained that "bridge loans" were short-term loans made to real estate developers to both finish up existing projects and to fund new ones. Drive Planning was allegedly lending its investors' money to developers to provide them with "immediate cash flow for all current and future projects." Drive Planning claimed that the developers (*i.e.*, borrowers for the bridge loans) had "offered a piece of real estate (owned outright) as a collateral for all loans made and provide[d] a copy of the Quitclaim deed" to Drive Planning. Drive Planning emphasized in its promotional materials that REAL investments were "fully collateralized (guaranteed) by real estate."

8. Drive Planning marketed the CORE Fund to prospective investors as providing "100% Passive Income from Tax Liens." Drive Planning guaranteed investors a return of 10% every six months or a 22% return per year for up to three years. Drive Planning further claimed that investors' funds in the CORE Fund were pooled together, government protected, and fully collateralized.

9. In promotional materials, Drive Planning alleged that Company-1 was its "investment partner" for the CORE Fund. Drive Planning described Company-1 as a "privately run real estate investment company that focuses on Tax Liens and Foreclosures."

10. D.P. and J.P. owned and operated Company-1, which invested in real estate, with a specific focus on "tax deeds." Company-1 offered a subscription-based investment fund to investors.

11. Tax deed investing allows investors to gain ownership over a property that has been foreclosed on because of unpaid property taxes. Investors can acquire a tax deed at a public auction after foreclosure, which permits the relevant government entity to recoup some or all the unpaid property taxes. The winner of a tax deed auction is granted a deed to the property and, after any redemption period elapses, may dispose of the property as they choose, for example, selling the property "as is," "flip and sell" the property, or using it as a rental property.

12. In or about June 2021, Company-1 established Real Estate Fund-1 as an investment vehicle through which it pooled subscriber funds to invest in tax deeds. Company-1 earned a management fee tied to the amount of funds that Real Estate Fund-1 deployed. Company-1 also prepared a private placement memorandum ("PPM") for Real Estate Fund-1 that was made available to potential subscribers in which it disclosed that the

4

investment involved a "high degree of risk" and offered no guaranteed rate of return. In fact, the PPM explicitly stated that Real Estate Fund-1 offered "no guarantee that any investment selected by our Managing Member will generate operating income or gains." Company-1 disclosed the PPM to defendant **BRADFORD** and Individual-1.

13. No later than in or about March 2024, defendant **BRADFORD**, Individual-1, and Drive Planning became aware that the Securities and Exchange Commission ("SEC") was investigating Drive Planning.

14. On or about August 13, 2024, the SEC filed a complaint in the United States District Court for the Northern District of Georgia alleging that Individual-1 operated Drive Planning as a massive Ponzi scheme since at least 2020.

**Manner and Means**

15. Beginning no later than in or about July 2021 and continuing until in or about June 2024, defendant **DAVID BRADFORD**, Individual-1, and others executed a scheme to defraud investors who believed their investments in the CORE Fund were being used to invest in tax liens with Drive Planning's supposed investment partner, Company-1, when in actuality their investments were not being used for that purpose but rather to pay off other Drive Planning investors, make commission payments to Drive Planning's agents, and pay for personal expenditures.

5

16. Defendant **BRADFORD** and Individual-1 interfaced with
Company-1 through D.P. and J.P. D.P. and J.P. explained to defendant
**BRADFORD** and Individual-1 the nature of Company-1's business and
Real Estate Fund-1, including that it invested in tax deeds, not tax liens.
Defendant **BRADFORD** was Drive Planning's primary point of contact for
Company-1, but did not control the flow of funds from Drive Planning to
Real Estate Fund-1.

17. Defendant **BRADFORD** and others at Drive Planning solicited
investments that were purportedly being invested in the CORE Fund.
Defendant **BRADFORD** created a marketing brochure to promote the
CORE Fund, and he provided the brochure to Drive Planning's sales
agents to solicit investments from investors.

18. Defendant **BRADFORD** and others at Drive Planning encouraged
investors to use money from retirement accounts, savings accounts, and
lines of credit to invest in the CORE Fund.

19. Defendant **BRADFORD** and others at Drive Planning materially
misrepresented that Company-1 was Drive Planning's "investment
partner" for the CORE Fund.

20. Defendant **BRADFORD** and others at Drive Planning materially
mispresented that Company-1 invested in tax liens and that Drive
Planning's investors who chose to invest in the CORE Fund would have

6

their investments used for that purpose. In actuality, Company-1 had advised defendant **BRADFORD** and Individual-1 that Company-1, through Real Estate Fund-1, invested in tax deeds.

21. Defendant **BRADFORD** and others at Drive Planning also fraudulently induced individuals to invest in the CORE Fund by materially mispresenting that: (i) investors in the CORE Fund were guaranteed a 22% return on investment; (ii) their investments were fully collateralized; and (iii) their investments were government protected. Company-1 was unaware of the CORE Fund and that Drive Planning had made these materially false representations regarding Real Estate Fund-1.

22. Defendant **BRADFORD** and others at Drive Planning further concealed the scheme to defraud by failing to disclose that Drive Planning did not invest any funds in the CORE Fund, *i.e.*, with Company-1, after on or about December 9, 2022. To the contrary, Drive Planning falsely represented to investors that Drive Planning was continuing to do so by, among other things, soliciting and receiving additional investments that were intended for the CORE Fund. Drive Planning in fact received at least $3 million after December 2022 from individuals who believed they were investing in the CORE Fund.

23. Indeed, Company-1 emailed defendant **BRADFORD** and Individual-1 regarding Drive Planning's investment in Real Estate Fund-1, including

7

on or about April 16, 2024. In the email, Company-1 noted that Drive Planning had not invested any money in 2023 with Company-1. In addition, on or about June 8, 2024, Company-1 sent a text message to defendant **BRADFORD** telling him Company-1 had not received any funds from Drive Planning since 2022.

24. Despite receiving quarterly updates from D.P. and J.P. about the performance of Real Estate Fund-1, defendant **BRADFORD** and Individual-1 failed to disclose to Drive Planning's investors who invested in the CORE Fund (or believed that they did) that the CORE Fund did not provide the returns Drive Planning promised.

25. Individual-1, defendant **BRADFORD**, and others at Drive Planning failed to disclose to investors and Company-1 that the SEC had opened an investigation into Drive Planning in or about March 2024. Drive Planning continued to solicit investments and pay commissions to its sales agents until in or about June 2024.

26. During the scheme, Drive Planning received at least $4.1 million from investors to invest in the CORE Fund.

### Overt Acts

27. To carry out the conspiracy and effect the objects and purposes thereof, the defendant, **DAVID BRADFORD**, and known and unknown

8

members of the conspiracy, committed various overt acts, among others, in the Northern District of Georgia and elsewhere:

    a. On or about October 14, 2021, defendant **BRADFORD** emailed Individual-1 regarding how defendant **BRADFORD**, Individual-1, and any agents would profit or share commissions from a hypothetical $100,000 investment in the CORE Fund.

    b. On or about July 23, 2022, defendant **BRADFORD** and Individual-1 invited representatives from Company-1 to present Real Estate Fund-1 in St. Petersburg, Florida to Certified Public Accountants and sales agents who were interested in joining Drive Planning.

    c. On or about July 25, 2022, defendant **BRADFORD** sent a text message to D.P. and J.P. to schedule a Zoom meeting to discuss Drive Planning's investment with Company-1 "for everyone else on the team to see the numbers and spreadsheets." Defendant **BRADFORD** further writes that Company-1 should "Get ready for a lot of money coming your way."

    d. On or about August 8, 2022, defendant **BRADFORD** emailed updated flyers regarding the CORE Fund, noting it included

"an added page with examples of the collateral and performance of the fund." Defendant **BRADFORD** also requested that the new flyer be added to Drive Planning's intranet.

e. On or about August 4, 2023, defendant **BRADFORD** received an email from an investor, S.P., informing defendant **BRADFORD** that S.P. had applied to invest in the CORE Fund. Defendant **BRADFORD** replied to the email and thanked S.P. for submitting the application. After submitting the application, S.P. wired $160,000 to Drive Planning to be invested in the CORE Fund.

f. On or about September 19, 2023, defendant **BRADFORD** received an email from a Drive Planning sales agent, R.L. In his email, R.L. notified defendant **BRADFORD** that he personally invested in the CORE Fund using funds from R.L.'s retirement account.

g. On or about October 15, 2023, defendant **BRADFORD** received an email from a Drive Planning sales agent, S.D. In her email, S.D. notified defendant **BRADFORD** an investor invested $150,000 in the CORE Fund.

h.  On or about November 19, 2023, defendant **BRADFORD** emailed J.P. and D.P. regarding the "projected profit" from the sales of property being held in connection with Real Estate Fund-1.

i.  On or about December 26, 2023, defendant **BRADFORD** received an email from a Drive Planning sales agent, E.S. Attached to the email was E.S.'s calculation of his earned commissions from Drive Planning from December 12, 2023 to December 26, 2023. E.S.'s calculation included a 6% commission on an investor's $40,000 investment in the CORE Fund.

j.  On or about January 16, 2024, in response to an email from J.P. in which J.P. wrote, "We know that the investment has not [gotten] the returns DRIVE needs and we would be happy to share what the slowdown was and how we plan on changing that," Individual-1 writes (copying defendant **BRADFORD**) that he would be "happy to get on a quick call" to discuss.

k.  On or about June 4, 2024, an investor emailed defendant **BRADFORD** and asked if $17,000 was enough to invest in the CORE Fund.  On the same day, defendant **BRADFORD**

11

replied to the email and provided a link to a website to invest in the CORE Fund.

All in violation of Title 18, United States Code, Section 371.

### Forfeiture

28. Upon conviction of the offense alleged in Count One of this Information, the defendant, **DAVID BRADFORD**, shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461, any property, real or personal, which constitutes or is derived from proceeds traceable to such offense. The property to be forfeited includes, but is not limited to, the following:

MONEY JUDGMENT: A sum of money in United States currency, representing the amount of proceeds obtained as a result of the offense alleged in Count One of this Information.

29. If any of the property described above, as a result of any act or omission of the defendant:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the Court;

d. has been substantially diminished in value; or

12

    e.  has been commingled with other property which cannot be

        divided without difficulty;

the United States of America intends, pursuant to Title 21, United States

Code, Section 853(p), as incorporated by Title 28, United States Code,

Section 2461(c), to seek forfeiture of any other property of said defendant

up to the value of the forfeitable property.


THEODORE S. HERTZBERG
*United States Attorney*


ALEX R. SISTLA
*Assistant United States Attorney*
Georgia Bar No. 845602

600 U.S. Courthouse
75 Ted Turner Drive SW
Atlanta, GA 30303
404-581-6000; Fax: 404-581-6181