# EXHIBIT 3

LAW360

**Portfolio Media. Inc.** | 230 Park Avenue, 7th Floor | New York, NY 10169 | www.law360.com
Phone: +1 646 783 7100 | Fax: +1 646 783 7161 | customerservice@law360.com

# Why Wait? Attys Say Sentencing Reform Should Apply Now

By **Phillip Bantz**

Law360 (August 3, 2026, 6:41 PM EDT) -- Sweeping changes to the federal sentencing guidelines are slated to take effect in the fall, but some white collar criminal defense attorneys are successfully arguing in court that defendants can benefit now from potential sentence reductions under the upcoming revisions.

That argument worked for Atlanta-based defense attorney Christopher Huber, a former federal prosecutor who secured a six-month sentence in late July for a client following a guilty plea in a pandemic relief fraud case. The client had been facing 24 to 30 months in prison under the current sentencing guidelines, according to court filings.

Pushing for the application of planned guidelines amendments before their enactment date isn't novel, but Huber and other white collar lawyers who spoke with Law360 said they had not heard of other attorneys raising similar arguments based on the latest round of upcoming guideline revisions.

"There may be a fair number of lawyers out there who just aren't aware of the changes that are coming," Huber, of The Huber Law Firm LLC, told Law360 in a recent interview.

Arguing that the amendments should apply now is a "great idea" with little downside, according to Marc Weinstein, chair of the white collar and regulatory defense group at Hughes Hubbard & Reed LLP in New York.

"Even if the courts were not to apply the specific new guidelines, you'd hope they'd take into account that if the person were sentenced several months from now, the guidelines would be different," he said.

Huber argued for a reduced sentence for his client based, in part, on proposed amendments to the federal sentencing guidelines that the U.S. Sentencing Commission **adopted** in April. The changes are set to take effect Nov. 1.

Huber said the government opposed applying the amendments before their official enactment date, but the court ultimately disagreed. The U.S. Attorney's Office in Atlanta declined to comment on the case, and the U.S. Department of Justice did not respond to requests for comment.

"This was the only [case] where I've made that argument, and the judge recognized it over the government's objections," Huber said.

"A fair number of defendants could benefit," he added. "Even if only half or a third of judges do this, that's still a lot of defendants between now and November."

### Stronger Case for Sentence Reductions

For white collar defendants, one of the most consequential amendments to the sentencing guidelines calls for adjusting a 16-tier chart used to calculate penalties for financial crimes, based on the loss amounts in a particular case, to account for inflation.

It's a long overdue update for a penalty formula that drives sentencing range guidelines in fraud cases and hasn't been adjusted for inflation since 2015, experts said.

While the amended loss table's enhancement reductions can be significant on their own in some cases, they also can serve as the starting point from which an attorney might argue for further reductions based on a defendant's lack of criminal history, cooperation with the government, willingness to accept responsibility and other potential mitigating factors.

"Everyone should be looking at these amendments to see if there's an opportunity for them to make an argument at sentencing," Christopher Kavanaugh, a partner at Cleary Gottlieb Steen & Hamilton LLP in Washington, D.C., told Law360.

The need to bring the chart in line with current dollar values, combined with the looming enactment date for the changes, should form a strong "basis for judges to follow the soon-to-be guidelines" now, according to Nina Spizer, co-chair of criminal law and investigations at Dilworth Paxson LLP in Philadelphia.

"This signal that the amendments are about to come into effect is only going to give judges and defense lawyers more confidence in departing downward" from the existing sentencing guidelines, said Drew C. Harris, a New York-based partner at Steptoe LLP.

White collar defense attorney Eugene Gorokhov of Burnham & Gorokhov PLLC in Washington, D.C., noted that, in his experience, "most judges are not trying to technically apply [sentencing enhancement] points that they know will soon no longer apply."

"Most prosecutors also probably aren't interested in extracting extra points in the waning days of the old guidelines table," he said.

When Kavanaugh was serving as U.S. attorney for the Western District of Virginia from 2021 to 2024, he said he implemented an office-wide policy against opposing the early application of forthcoming changes to sentencing guidelines that might benefit defendants.

"That's only fair, given that these are amendments that are going into effect and it's truly just the calendar that people are waiting on," he said.

Congress could still intervene to block the amendments from being enacted in November, but that rarely happens, according to experts.

Government opposition to the early application of adopted guidelines changes is "short-sighted" and could spur defendants and their attorneys to move to delay sentencing until after the amendments take effect, Kavanaugh said.

Judges who refuse to consider the amendments might also arguably be creating "sentencing disparities among similarly situated defendants, which are supposed to be avoided under the law," he added.

**Guarding Against Reversal Risks**

The total loss calculated in Huber's client's case was just over $300,000, which would trigger a 12-point enhancement to the base offense level used to calculate sentences under the current guidelines. The amended table shaved two points off the enhancement level.

Huber asserted in a sentencing memo that his client would have benefited from the upcoming revisions to the guidelines if he had "delayed resolving the case for several months." He also urged the sentencing judge to "recognize that the guidelines as calculated overstate the seriousness of the offense" in light of the "pending amendments to the loss table."

Judges must consider the guidelines when crafting a sentence, but adhering to the guidelines is not mandatory. The U.S. Supreme Court made that clear in its landmark 2005 decision in U.S. v. Booker , which held that judges have discretion under Title 18, Section 3553 of the U.S. Code to hand down reasonable sentences that veer from the guidelines.

If a judge were to explicitly apply the upcoming amendments to a sentencing order, it could open the

door for potential appellate issues, according to John S. Ghose, special counsel at Baker Donelson Bearman Caldwell & Berkowitz PC in Atlanta and a former federal prosecutor.

Arguing that the amendments apply now is a "smart argument to make, but you have to make the argument correctly — and the judge has to make the decision correctly because otherwise the judge could get reversed," Ghose said.

"If the judge is going to pretend that it's November when it's actually July and apply the new [guidelines] today, that would likely be an error," he added. "But the proper way for the judge to do it is to say, 'I have discretion to deviate from the recommended sentencing guidelines range.'"

The judge in Huber's case did not specifically cite the upcoming guidelines amendments in her written judgment, which imposed the sentence under the Sentencing Reform Act of 1984 that enacted Title 18, Section 3553.

But the judge did say in court that she was handing down a sentence two levels below what the current guidelines range called for based on the upcoming amendments, according to Huber. He said the judge also specifically stated that if the appellate court found error in her original order, she would still hand down the same sentence under her discretion.

"That gives a lot of insulation on appeal," Huber said. "So she absolutely was cognizant of that possibility and did what she could to protect against it."

--Editing by Philip Shea.

All Content © 2003-2026, Portfolio Media, Inc.